*Formatted for Electronic Distribution*                                                                                                                        *For Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

| | | |
|---|---|---|
| **In re:**<br>　　**CAROL PORTER,**<br>　　　　　Debtor. | Filed & Entered<br>On Docket<br>February 08, 2008 | **Chapter 13 Case<br># 07-10370** |
| **In re:**<br>　　**JOSEPH HARBESON and<br>　　AMANDA HARBESON,**<br>　　　　　Debtors. | | **Chapter 13 Case<br># 07-10449** |

*Appearances:*   Michelle Kainen, Esq.　　　　Jan Sensenich, Esq.　　　　Tavian M. Mayer, Esq.
　　　　　　　　Kainen Law Office　　　　　　Chapter 13 Trustee　　　　　Mayer & Mayer
　　　　　　　　White River Jct., VT　　　　　White River Jct., VT　　　　South Royalton, VT
　　　　　　　　For Debtor Carol Porter　　　　For Trustee Pro Se　　　　　For Creditor Bank of the West
　　　　　　　　For Debtors Joseph
　　　　　　　　　& Amanda Harbeson　　　　　　　　　　　　　　　　　Martin A. Mooney, Esq.
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Deily, Mooney & Glastetter
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Albany, NY
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　For Creditor DCFS Trust

**M<small>EMORANDUM OF</small> D<small>ECISION</small>**
**S<small>USTAINING</small> C<small>REDITORS'</small> O<small>BJECTIONS TO</small> C<small>ONFIRMATION</small>**
**<small>AND</small> S<small>TRIKING</small> C<small>ERTAIN</small> L<small>ANGUAGE FROM</small> P<small>LANS</small>**

　　　In each of these cases, the Debtors' plans contain a provision that purports to preserve a broad range of not-yet-ripe federal and state statutory and common law causes of action against unidentified parties. In both cases, the language of the provision is identical and a creditor has objected. The Court confirmed both plans, with the caveat that adjudication of the objections might result in the controversial provision being modified or stricken; it consolidated both cases for the purpose of rendering a decision on this issue. For the reasons that follow, the Court sustains the creditors' objections and strikes the controversial provision from each of the confirmed plans.

## I. J<small>URISDICTION</small>

　　　The Court has jurisdiction to adjudicate the objections to these Chapter 13 plans pursuant to 28 U.S.C. §§ 157(b)(2)(L) and 1334.

## II. THE ISSUE PRESENTED

At issue in both of these cases is whether a debtor may preserve, in a Chapter 13 plan, potential claims and causes of action that: (1) arise from circumstances that occurred pre-petition, but are not yet identified, or even identifiable, in terms of the nature of the claim or the identity of the putative defendant; (2) would be pursued, if at all, post-confirmation; and (3) are not disclosed in the debtor's bankruptcy schedules. The answer to the question involves consideration of the *res judicata* effect of confirmation orders, due process concerns, and the due diligence required prior to filing a plan. These considerations, set out below, persuade the Court that it must answer the question in the negative.

## III. BACKGROUND, PROCEDURAL HISTORY, AND ARGUMENTS

### A.  The Carol Porter Case

On June 12, 2007, Carol J. Porter filed a Chapter 13 bankruptcy petition and proposed plan. In the "Miscellaneous Provisions" section of her plan (the "Porter Plan"), Ms. Porter included the following language (the "Proposed Language"):

> Confirmation of this plan shall constitute a finding that the debtor does not waive[,] release or discharge but rather retains and reserves for herself and the Chapter 13 Trustee any and all pre-petition claims and any and all post-petition claims[1] that they could or might assert against any part[y] or entity arising under or otherwise related to any state or federal consumer statute or under state or federal common law including but not limited to fraud, misrepresentation, breach of contract, unfair and deceptive acts and practices, TILA violations, RESPA violations, FDCPA violations, FCRA violations, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure and by the Local Rules of this Court.

(doc. # 2, ¶ 13(5)). Creditor Bank of the West (the "Bank") objects to the Proposed Language on a number of grounds. The Bank contends that: (a) a debtor filing bankruptcy has the obligation (under 11 U.S.C. § 521) to list all legal claims held or claimed by the debtor and the Proposed Language appears to be an attempt by the Debtor to preserve claims without listing them in the petition; (b) the Proposed Language does not fit within any of the categories enumerated in § 1322(b)(1)-(10) under the heading of what a chapter plan "may" do, and is clearly not authorized by the § 1322(b)(11) "catch-all" provision that provides that "a plan may include any other appropriate provision not inconsistent with this title"; (c) the Proposed Language would dilute the *res judicata* impact of a confirmed plan; and (d) the Proposed Language is superfluous, ambiguous, and serves no permissible purpose (doc. ## 13, 21).

---

[1] Although the Debtor refers here to "post-petition claims," she does not specify whether she is referring to claims that <u>arise</u> from post-petition facts and events or to claims that she intends to <u>pursue</u> post-petition based upon pre-petition facts and events. Taking into account the record as a whole, and based upon more detailed arguments presented at oral argument, the Court interprets the Proposed Language to refer to the latter.

2

The Debtor's position is that, "[t]o expect a Debtor to fully examine each and every possible claim under every consumer protection statute by the time a plan needs to be filed is overly burdensome, unnecessary and may not be possible" and therefore debtors needed the Proposed Language (doc. # 14, at 2). The Debtor also insists that violations of the statutes referred to in the Proposed Language may not come to light until a creditor files a proof of claim and, since the claims bar date falls after the confirmation hearing date in this District, that gives the creditor an added incentive to hold its proof of claim until after confirmation in order to be immune from accountability for its bad acts. (Id.) The Debtor contends that preventing a debtor from preserving potential claims because a violation has not revealed itself truncates a debtor's rights under applicable non-bankruptcy laws, which have different statutes of limitations. (Id.) Additionally, the Debtor points out that § 521(a)(1)(B) directs debtors to file a list of assets and liabilities "unless the court orders otherwise." The Debtor reasons that this provision gives the Court discretion to rule that the failure to list a potential claim is not a violation of § 521 because there is no asset until a violation is properly identified. Lastly, the Debtor claims that the Proposed Language is in the best interest of creditors because it puts creditors on notice that the debtor's right to bring such claims is not extinguished by the confirmation order. (Id.)

On August 7, 2007, the Court confirmed the Porter Plan (doc. # 17), with the following caveat:

> Confirmation is subject to a reservation of the issue of whether or not Paragraph No. 13, Subsection 5 of the Plan is enforceable or whether it will be modified or stricken from the Plan. The debtor, and the trustee shall submit memoranda of Law on the issue by August 13, 2007 with a response due from Bank of the West by August 20, 2007.

(doc. # 17).

In her subsequent memorandum, the Debtor contends that she has "no immediate knowledge of any claims of the variety which are being preserved in her Chapter 13 plan," and therefore there is "nothing to list." She adds that even a "reasonably diligent inquiry may not reveal potential causes of action until they rise to the surface on their own" (doc. # 19). According to the Debtor, since the Code and Rules provide that an inquiry must be reasonable, an exhaustive inventory of all possible issues, pre-petition, would be an onerous task that would delay confirmation. (Id.) The Debtor points to the 90-day period after confirmation within which creditors could file claims, asserting that if proofs of claim contained information that indicated a possible violation of applicable non-bankruptcy law, debtors would be barred by the principle of *res judicata* from addressing the violation and this would create a "trap" for debtors and the trustee. (Id.) The Debtor insists that "[m]erely preserving potential or actual claims has absolutely no bearing on the ultimate outcome of any adversary proceeding." (Id.) The Debtor acknowledges that she has not found any cases specifically on point to support her position. (Id. at 5).

The Chapter 13 trustee (the "Trustee") filed a memorandum supporting both confirmation of the plan and the inclusion of the Debtor's Proposed Language. In the Trustee's view, the Proposed Language

3

was meant to "clarify that the debtor does not waive any of the enumerated claims as part of the confirmation process," and did not "attempt to create or expand any rights beyond those which would normally exist but for the bankruptcy" (doc. # 20). As an illustration of the salutary nature of the Proposed Language, the Trustee describes a hypothetical scenario where (a) either pre-petition or immediately after a debtor filed a bankruptcy case, a mortgagee misapplied mortgage payments, paid forced insurance, and assessed impermissible fees, without showing any of these amounts on the debtor's monthly mortgage statements; (b) the debtor's chapter 13 plan was confirmed; (c) the mortgagee then filed a proof of claim revealing these charges, prompting the debtor's attorney to make a RESPA request; and (d) the documents delivered in response to the request showed RESPA and/or other violations. (Id.) The Trustee argues that, given these facts, the debtor could not have listed her claim against the mortgagee on her bankruptcy schedules because she was unaware of these problems when she filed her petition, and it would be unfair for the mortgagee, who had information that might constitute grounds for the debtor to obtain relief (under a RESPA or other cause of action) to receive a discharge of all claims and defenses before the statute of limitations had run. The Trustee asks how confirmation of a plan could be *res judicata* if those new claims required a motion or an adversary proceeding. (Id.)

The Bank filed a second supplemental memorandum (doc. # 28) in which it concurs in and adopts the analysis articulated in the memorandum of law filed by the creditor in the Harbeson case, set out below (case # 07-10449, doc. # 17).

**B.    The Joseph and Amanda Harbeson Case**

On July 17, 2007, Joseph and Amanda Harbeson filed their Chapter 13 petition and proposed plan (doc. ## 1, 2). Paragraph 13 of their plan (the "Harbeson Plan"), entitled "Other Provisions," contained the same Proposed Language as in the Porter Plan.[2]  Creditor DCFS Trust ("DCFS") objected to confirmation based on the inclusion of the Proposed Language. DCFS argues that: (a) since no such claims had been identified in the Debtors' schedules, they could not request "findings" on those claims that would bind other parties; (b) if such claims arose at a later date, they could be added to the schedules, allowing the affected creditors to retain their right to contest whether the claims were waived, released, or discharged; (c) the Proposed Language is superfluous and does not specifically address any element of § 1322 but rather serves as a "trap" to creditors seeking to address possible defenses at a later time; and (d) the Proposed Language demonstrates a lack of good faith and an attempt to abuse the *res judicata* effect of confirmation orders. (Id.)  The Debtors' memorandum of law in support of confirmation (doc. # 12) was substantially similar to the memorandum submitted in the Porter case[3] (case # 07-10370, doc. # 19).

---

[2] The Debtors subsequently filed an amended plan (doc. # 13), but did not change the Proposed Language.

[3] The same attorney represented Ms. Porter and Mr. and Mrs. Harbeson.

4

At the August 16, 2007 confirmation hearing, the Court confirmed the Harbeson Plan, with the caveat that it would not make a determination on the propriety of the Proposed Language at that time.[4] DCFS subsequently filed a memorandum of law in support of its objection to confirmation, reasserting its position that the Proposed Language was superfluous as well as prejudicial, and predicting it would invite future litigation as to its meaning (doc. # 17). In that memorandum, DCFS delves into the impact of the Proposed Language on the *res judicata* effect of confirmation orders. It cites Educational Credit Mgmt. Corp. v. Whelton (In re Whelton), 299 B.R. 306 (Bankr. D. Vt. 2003), aff'd, 432 F.3d 150 (2d Cir. 2005), a student loan discharge case where the Second Circuit affirmed this Court, holding that § 1322(b)(11)[5] barred a "discharge by declaration" provision in the debtor's plan and confirmation order. DCFS argues that Whelton supports a rejection of the Proposed Language because such language could "invite an abuse of the *res judicata* effect of the Confirmation Order to bind creditors and eliminate possible defenses that creditors may have to actions," and the language could allow debtors to "ambush" creditors beyond the pendency of their bankruptcy case and judicially "legislate out" creditors' possible affirmative defenses (doc. # 17, at 2). DCFS asserts that if the Proposed Language was stricken, there would be no abuse of *res judicata* because "[p]arties would simply be left to their rights as those rights are protected by the Bankruptcy Code and other federal and state statutes." (Id. at 3).

## IV. DISCUSSION

Whether the Proposed Language may be included in a confirmation order is a matter of first impression for this Court. Determining the merit of the creditors' objections requires the Court to analyze the *res judicata* effect of confirmation orders, to scrutinize due process requirements, and to balance the need for finality in confirmation orders against a debtor's duty to perform reasonable due diligence prior to proposing a Chapter 13 plan. Finding that the Proposed Language in a Chapter 13 plan violates the finality and notice requirements of the Bankruptcy Code, compromises the *res judicata* effect of confirmation orders, and undermines the due diligence obligations of debtors, the Court concludes that the objections must be sustained.

**A.    Confirmation Orders Must Convey Finality and Have *Res Judicata* Effect**

Section 1327(a) of the Code is unequivocal: "The provisions of a confirmed plan bind the debtor and each creditor, . . . whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). In Celli v. First National Bank of Northern New York (In re Layo), 460 F.3d 289 (2d

---

[4] The Trustee has not yet submitted a proposed order so there is no written order memorializing confirmation of the amended plan.

[5] At the time this Court decided Whelton, § 1322(b)(10) provided that a chapter 13 plan shall "include any other appropriate provision not inconsistent with this title." In 2005, BAPCPA amended § 1322, and this provision is now found at § 1322(b)(11).

5

Cir. 2006), the Second Circuit discussed the *res judicata* effect of orders confirming Chapter 13 plans, approvingly quoting from <u>Collier on Bankruptcy</u> which interpreted the language of § 1327(a):

> Upon becoming final, the order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan. Absent timely appeal, the confirmed plan is *res judicata* and its terms are not subject to collateral attack . . .
>
> The purpose of section 1327(a) is the same as the purpose served by the general doctrine of *res judicata*. There must be finality to a confirmation order so that all parties may rely upon it without concern that actions that they may later take could be upset because of a later change or revocation of the order.

<u>Layo</u>, 460 F.3d at 293 (quoting 8 <u>Collier on Bankruptcy</u> ¶ 1327.02 (15th ed. rev.)). "Under § 1327, a confirmation order is *res judicata* as to all issues which were decided, or could have been decided, at the hearing on confirmation." <u>Whelton</u>, 299 B.R. at 314.

### B.    The Proposed Language Is Inconsistent with § 1327 and Therefore Is Not Appropriate to Include in a Chapter 13 Plan Under § 1322

A confirmation order approves the terms of a Chapter 13 plan. Section 1322 of the Code, in turn, delineates the boundaries for the contents of a plan. Section 1322(a) sets forth what a plan "shall" do, and subsections 1322(b)(1)-(10) catalogue what a plan "may" do, along with the so-called "catch-all" provision in subsection (b)(11) that permits a Chapter 13 plan to "include any other <u>appropriate</u> provision <u>not inconsistent</u> with this title" (emphasis added). DCFS Trust and Bank of the West (together, the "Creditors") argue that because § 1322 requires that plan provisions be consistent with Title 11, and because the intent of the Proposed Language is to diminish the *res judicata* effect of a confirmed plan mandated by § 1327(a), the language is therefore inconsistent with Title 11 and not "appropriate" to include in a Chapter 13 plan pursuant to §1322.

The Proposed Language is extremely broad. Rather than promoting finality of the confirmation orders, it eviscerates finality by preserving a myriad of claims until some undisclosed future date. Although the Debtors argue that the Proposed Language would preserve only those claims that they later learn about (for example, after a creditor files a proof of claim), the Proposed Language contains no such limitation: it would allow post-confirmation litigation of <u>any</u> claim, even if the *res judicata* bar would have otherwise applied to that claim (because treatment of that claim had been determined in the confirmation process). This result unquestionably diminishes the *res judicata* effect of confirmation orders guaranteed by § 1327(a). Consequently, the Proposed Language is "inconsistent" with Title 11 and there is no authority to include it in a plan under § 1322(b)(11).

Likewise, to the extent that the Proposed Language provides that confirmation of the plan constitutes a "finding" by the Court that the Debtors have reserved unidentified claims to a date beyond confir-

6

mation, that is another basis for determining that the plan provision is inconsistent with the *res judicata* effect created by § 1327(a). The Court cannot make a "finding" in a confirmation order regarding claims that may not even exist as of the date of confirmation.

This Proposed Language has a rough parallel to the "discharge by declaration" language that the Second Circuit found unacceptable in <u>Whelton.</u> In that case, the debtor had sought to discharge his student loans by including a provision in his plan that confirmation constituted a finding that excepting his loans from discharge would impose an undue hardship on him. The debtor had not filed an adversary proceeding which would have allowed the bankruptcy court to make a factual finding of undue hardship as a prerequisite to discharge of the student loan. The Second Circuit soundly rejected the debtors' "discharge by declaration" approach. <u>Whelton</u>, 432 F.3d at 154-55.

Here, the Debtors are not asking the Court to make an advance factual finding on the merits of substantive claims that may only be determined in an adversary proceeding (as in <u>Whelton</u>). Instead, they are asking the Court to make a finding that certain unidentified causes of action are preserved, even though the facts essential to establishing such claims were not extant, or disclosed, as of the date of the confirmation hearing. Neither the Debtors nor the Creditors could have placed those "facts" before the Court, but the Debtors are nevertheless asking for a finding based on those "facts." See <u>NLRB v. United Techs. Corp</u>, 706 F.2d 1254, 1260 (2d Cir. 1983) ("Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and <u>whether the facts essential to the second were present in the first</u>.") (emphasis added).

Since the Proposed Language undermines the *res judicata* effect of a confirmation order, it conflicts with the provisions of § 1327(a). And, since the Proposed Language conflicts with a provision of Title 11, pursuant to § 1322, it is inappropriate to include in a Chapter 13 plan.

C.  **If All Prongs of the *Res Judicata* Test Are Not Satisfied, The Proposed Language Serves No Purpose**

The Debtors' and the Trustee's primary argument in favor of retaining the Proposed Language focuses on the timing of confirmation hearings vis-a-vis the deadline for filing proofs of claim and the potential of creditors "trapping" debtors with documents that disclose a basis for viable claims or causes of action after the confirmation order has become final. Noting that there is a 90-day period after the meeting of creditors within which non-governmental creditors are permitted to file proofs of claim[6] (and in this District, confirmation hearings are typically set for the same day as the meeting of creditors), the Debtors and Trustee are concerned that if the proofs of claim contain information indicating possible

---

[6] Federal Rule of Bankruptcy Procedure 3002(c) provides that, in a Chapter 13 case, "a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a). . ."

7

violations of applicable non-bankruptcy law, they would be barred by the *res judicata* effect of the confirmed plan from challenging such violations, even if they had been unaware of the cause of action prior to a creditor filing a proof of claim. The Debtors and Trustee thus argue that they need the Proposed Language to level the playing field. This argument fails. If the facts and claims at issue at confirmation are not the same as those adjudicated in a post-confirmation suit, then all of the prongs of the *res judicata* test would not be satisfied and the confirmation order does not bar the subsequent cause of action.

The five elements of the test for *res judicata* in bankruptcy proceedings involving a reorganization plan are:

> (1) the prior decision was a final judgment on the merits; (2) the litigants were the same parties; (3) the prior court was of competent jurisdiction, and (4) the causes of action were the same. In the bankruptcy context, we ask as well [5] whether an independent judgment in a separate proceeding would impair, destroy, challenge, or invalidate the enforceability or effectiveness of the reorganization plan.

Layo, 460 F.3d. at 292 (quoting Corbett v. MacDonald Moving Servs., Inc., 124 F.3d 82, 87-88 (2d Cir. 1997)). A particularly "critical question for *res judicata* purposes is whether the party could or should have asserted the claim in the earlier proceeding." Id. (quoting In re Howe, 913 F.2d 1138, 1146 n.28 (5th Cir. 1990)). The confirmation process revolves around the treatment of claims, and encompasses only those facts necessary to classify and value claims. It does not generally resolve specific substantive disputes which must be adjudicated in adversary proceedings. See § 1325; Fed. R. Bankr. P. 7001. Therefore, the facts and issues considered in the confirmation process are almost always distinct from the facts and issues involved in a claim or cause of action a debtor wishes to pursue post-confirmation in an adversary proceeding. When that is the case, *res judicata* would not apply; thus, the Proposed Language is unnecessary to protect the Debtors from the preclusive effect of a confirmation order.

The Second Circuit addressed this very issue in a similar context in Whelton. In discussing circumstances where the *res judicata* bar of confirmed plans did not apply, the Court approvingly quoted Enewally v. Washington Mutual Bank (In re Enewally), 368 F.3d 1165, 1173 (9th Cir. 2004), for the proposition that "[a]lthough confirmed plans are *res judicata* to issues therein, the confirmed plan has no preclusive effect on issues that must be brought by an adversary proceeding, or were not sufficiently evidenced in a plan to provide adequate notice to the creditor." Whelton, 432 F.3d at 154. The Second Circuit observed that the facts required to show undue hardship for a student loan discharge "were not pleaded or proved by Whelton, nor found by the Bankruptcy Court in awarding him a discharge. Thus, by including a discharge by declaration provision, the debtor has avoided the statutorily required adjudication on the merits which is also necessary for the application of *res judicata*." Id. at 155.

Applying that rule in the present context, if the facts underlying a potential claim under one of the many causes of action enumerated in the Proposed Language have not been disclosed or pleaded by the

Debtors, nor found by the Court during the confirmation process, the cause of action could not be deemed to have been addressed at the confirmation hearing nor could it have been adjudicated on the merits. As a result, two of the elements of the *res judicata* test would not have been met (the prior decision would not have been a final judgment on the merits and the causes of action would not have been the same) and the confirmation order would not present a *res judicata* bar to such claims. See Educational Credit Mgmt. Corp. v. Mersmann (In re Mersmann), 505 F.3d 1033, 1050 (10th Cir. 2007) (en banc) ("We thus agree with those courts that conclude bankruptcy matters requiring an adversary proceeding do not meet [the] requirements [of *res judicata*] . . . . In short, if an issue must be raised through an adversary proceeding, it will not have a preclusive effect unless it is actually litigated."); Can-Pen Corp. v. Hanson, 58 F.3d 89, 93 (4th Cir. 1995) ("Because confirmation of a chapter 13 plan is *res judicata* only as to issues that can be raised in the less formal procedure for contested matters, confirmation generally cannot have preclusive effect as to [matters] which must be resolved in an adversary proceeding.").

There is no question that, under Bankruptcy Rule 7001, the TILA, RESPA, and other claims allegedly preserved in the Proposed Language can only be adjudicated through an adversary proceeding, and that any dispute regarding the Debtors' rights to pursue such claims, and any statute of limitations issue, would likewise require an adversary proceeding. Accordingly, if the Debtors were to decide to pursue any claim or cause of action described in the Proposed Language post-confirmation and did so via an adversary proceeding, the Debtors would not be barred by the preclusive effect of their confirmation order, unless all prongs of the *res judicata* test had been met. Since the types of claims and causes of actions purportedly preserved by the Proposed Language are distinct from the types of issues generally addressed during the confirmation process, and since confirmation orders do not typically include judgments on the merits of such claims or causes of action, it is highly unlikely that any particular confirmation order would preclude a debtor from pursuing those claims and causes of action.

In these two cases, the Court has neither addressed the types of claims or causes of action to which the Proposed Language refers nor has it made any findings on the merits of such claims or causes of action.[7] Accordingly, under this Circuit's test for the applicability of *res judicata,* the Court finds that the confirmation orders in these two cases do not create a *de facto* bar to the Debtors' right to pursue such claims and causes of action, and therefore concludes that the Proposed Language is not necessary to preserve the type of claims described therein.

---

[7] The analysis here is somewhat constrained by the fact that there is no actual post-confirmation claim in either case which would allow the Court to explore the *res judicata* effect of the confirmation orders in relation to facts underlying such a claim. Still, the Court may render a decision on the permissibility of the Proposed Language because it concretely affects the parties' rights. See In re Rheaume, 296 B.R. 313 (Bankr. D. Vt. 2003).

9

### D. The Proposed Language Is Too Vague to Be Included in an Order with *Res Judicata* Effect

A pertinent exception to the *res judicata* bar allows debtors to pursue claims after confirmation, but only if the debtors reserve those claims and describe them with particularity. In the context of Chapter 11 plans, for example, courts have often found that where the debtor had reserved in a plan the right to pursue claims post-confirmation, *res judicata* did not apply to bar those claims.[8] Courts have debated whether the reservation of rights language must refer to specific claims and creditors or whether a blanket reservation (such as the Debtors employ here) would suffice. The majority of courts that have examined the issue "have held that for this exception to apply, the plan must expressly reserve the right to pursue that particular claim post-confirmation and that a blanket reservation allowing for an objection to any claim is insufficient." Tracar, S.A. v. Silverman (In re Am. Preferred Prescription, Inc.), 266 B.R. 273, 277-78 (E.D.N.Y. 2000) (citing cases). In Browning v. Levy, 283 F.3d 761 (6th Cir. 2002), for example, the court ruled that a blanket reservation clause that named neither the creditor nor stated the factual basis for the reserved claims was inadequate. Id. at 775. See also In re Bankvest Capital Corp., 375 F.3d 51, 70 (1st Cir. 2004) (expressly reserved claim survives *res judicata* challenge); D & K Props. Crystal Lake v. Mutual Ins. Co. of New York, 112 F.3d 257, 260 (7th Cir. 1997) (holding that to avoid *res judicata* effect of Chapter 11 confirmation order, reservation of cause of action must be express, i.e., specifically identified and set out in writing); In re Kelley, 199 B.R. 698 (9th Cir. B.A.P. 1996) (same); Bonwit Teller, Inc. v. Jewelmaster, Inc. (In re Hooker Invs. Inc.), 162 B.R. 426, 433 (Bankr. S.D.N.Y. 1993) (blanket reservation insufficient).

Although a minority of courts, including some in this Circuit, have held that a blanket reservation of rights survives a *res judicata* challenge, their rationale was generally based on the practicalities of shepherding large Chapter 11 cases to confirmation. This Court finds it significant that in Katz v. I.A. Alliance Corp. (In re I. Appel Corp.), 300 B.R. 564, 570 (S.D.N.Y. 2003), aff'd, 104 Fed. App'x 199 (2d Cir. 2004),[9] for example, the primary reason that the court found a general reservation of the right to litigate post-confirmation claims acceptable was because it was persuaded that in large Chapter 11 bankruptcies "the investigation and decision to pursue every possible claim of a debtor can take several years," and that "allowing a debtor to include a general reservation . . . expedites the process of confirming a plan of reorganization." 300 B.R. at 569. By contrast, the case management concerns that drove the result in Appel do not, generally speaking, apply in Chapter 13 cases where there are typically substantially fewer creditors and substantially less complex claims.

---

[8] Section 1123(b)(3)(B) specifically authorizes a Chapter 11 debtor, trustee, or representative of the estate to retain and enforce causes of action post-confirmation.

[9] The Second Circuit affirmed on the ground that the disclosure statement adequately informed the creditors that specified claims would not be part of the bankruptcy estate and *res judicata* did not apply (since a reservation of rights in a Chapter 11 plan is read in conjunction with the disclosure statement, and if the latter provides more specificity, that suffices to overcome the *res judicata* bar).

The Second Circuit has not yet ruled on whether reservation of rights language must be specific in Chapter 11 plans. However, as the court in American Preferred pointed out, in Sure-Snap Corporation v. State St. Bank & Trust Company, 948 F.2d 869 (2d Cir. 1991), the Second Circuit "impliedly recognized that should such an exception to *res judicata* exist, the right to bring the subsequent litigation must be specifically reserved in the confirmed plan." American Preferred, 266 B.R. at 278; see also D & K Props. Crystal Lake v. Mutual Life Ins. Co. of New York, No. 95 C 4974, 1996 WL 224517, at *4 (N.D. Ill. May 1, 1996), aff'd, 112 F.3d 257 (7th Cir. 1997) (interpreting Sure-Snap to imply that, to escape the *res judicata* bar, the right to bring post-confirmation litigation must be expressly reserved in the confirmed plan).

In Hearn v. Bank of New York (In re Hearn), 337 B.R. 603 (Bankr. E.D. Mich. 2006), the bankruptcy court found Chapter 11 reservation of rights cases "persuasive by analogy" in a Chapter 13 case where the question was whether the language reserving a cause of action to avoid a lien under § 544 was specific enough to provide notice to the parties. Id. at 611. The Hearn court assessed the text before it against the body of Chapter 11 case law and held that, because the reservation of rights specifically named the cause of action (claims under § 544) and listed the holders of the secured claims subject to attack, the language survived a *res judicata* challenge and the post-confirmation action was not precluded by the confirmation order.

This Court, like the court in Hearn, finds the Chapter 11 reservation of rights cases helpful, and aligns itself with those courts that have held that a reservation of rights clause in Chapter 13 plans must be express in order to overcome the *res judicata* bar: the claim or claims must be specified, and the particular creditor or class of creditors against whom the debtor is preserving rights must also be specified. Given the breadth, generality, and lack of specificity in the Proposed Language, the Court finds the Proposed Language does not fall within the exception to the *res judicata* bar and is too vague to reserve the Debtors' rights to pursue the claims mentioned therein post-confirmation. In sum, although the reservation of rights exception to the principle of *res judicata* provides Chapter 13 debtors an opportunity to preserve particular claims post-confirmation, notwithstanding § 1327(a), the Debtors' attempts to do so here fail because the Proposed Language does not describe the claims or potential defendants with any specificity.[10]

---

[10] At the same time, it is important to distinguish the Proposed Language from provisions in other plans that (a) identify potential causes of action with specificity and set a time frame within which the debtor will file an adversary proceeding or motion to resolve a particular issue, and (b) declare that said claim or cause of action will be waived, and the creditor will be treated as set forth in the plan, if the claim is not pursued within the specified time frame. This kind of language is included in plans in this District fairly regularly with respect, for example, to objections to claims or litigation to declare a mortgage invalid. These kinds of provisions differ from the Proposed Language because (i) the creditor who would be the target of the objection or cause of action is clearly identified in the plan and is only subject to post-confirmation proceedings with respect to the resolution of a particular issue within a specified and limited time frame, and (ii) the creditor has notice of both the treatment proposed by the plan and the fact that the treatment might be changed by a subsequent proceeding.

11

**E.    The Proposed Language Fails to Satisfy Due Process Requirements**

The vagueness of the Proposed Language has another potential *res judicata* defect: it fails to provide creditors with the requisite due process. "[A] confirmed plan has *res judicata* effect only to the extent its provisions give clear notice to creditors and any other interested parties that the plan will have the claimed effect." Bilal v. Household Fin. Corp. II (In re Bilal), 296 B.R. 828, 836 (Bankr. D. Kan. 2003) (quoted in Graves v. First Educators Credit Union (In re Graves), 2007 WL 824059 at, * 7 (Bankr. N.D. Ala. Mar. 14, 2007)). A "vague blanket reservation of rights clause is insufficient notice to creditors to satisfy due process." Am. Gen. Fin. Inc. v. Tippins (In re Tippins), 221 B.R. 11, 22 (Bankr. N.D. Ala. 1998). See also Hearn, 337 B.R. at 613 ("The problem with the reservation [of rights] in [cases holding that a blanket reservation should be given no effect] is that it just was not specific enough to put on notice those parties against whom such claims might be brought such that creditors could intelligently evaluate and ultimately vote on the debtor's plan of reorganization. There is no such absence of due process in this case.").

In this Circuit, Chief Judge Gerling of U.S. Bankruptcy Court for the Northern District of New York discussed the due process requirements of a Chapter 13 plan in American General Financial Services, Incorporated v. Bryan (In re Bryan), 357 B.R. 12 (Bankr. N.D.N.Y. 2006). While that case involved a post-confirmation challenge to the validity and priority of a lien, and not the *res judicata* effect of the plan, Judge Gerling's perspective is both pertinent and instructive:

> It is critical that a debtor provide notice to the affected creditor that comports with due process requirements in order for the creditor to make a conscious decision whether to participate in the process. The notice must be reasonably calculated to bring to the party's attention the nature and substance of the pending determination, i.e., the extent of the adverse effect on the party's rights (the qualitative aspect), and it must afford a reasonable time in which to respond (the quantitative aspect). Courts [that] have addressed this issue have required . . . that the creditor and its claim be identified . . .

Id. at 20 (internal quotation marks and citations omitted).

The Debtors in both cases at bar are asking the Court to give its blessing to a blanket provision that seeks to "preserve any and all pre-petition claims and any and all post-petition claims that they could or might assert against any part[y] or entity arising under or otherwise related to any state or federal consumer statute or under state or federal common law" beyond the confirmation order – even including claims that, on the date of case filing, may have been non-existent. Although the Proposed Language identifies some claims by name (e.g., TILA, RESPA), it does not provide creditors with notice as to which specific claims are, or might be, at issue. In addition, and even more importantly, the Proposed Language does not specify any particular creditor or class of creditors that may be affected by this reser-

12

vation of rights. Consequently, the Proposed Language fails to provide parties with the requisite due process.

**F.     The Proposed Language Is No Substitute for Reasonable Due Diligence**

As indicated above, the Debtors insist that they need the Proposed Language because they would otherwise be barred by the *res judicata* effect of a confirmation order from challenging possible violations of applicable non-bankruptcy law that come to their attention post-confirmation. While there may be instances where the facts giving rise to a potential cause of action will not become apparent until a proof of claim is filed, or some other event occurs post-petition, it is the exercise of reasonable due diligence, rather than the inclusion of the Proposed Language, that will protect the Debtors.

The Second Circuit squarely addressed the interplay of *res judicata* and due diligence in Layo: "As a general rule, newly discovered evidence does not preclude the application of *res judicata*. Exceptions to this rule exist when the evidence was either fraudulently concealed or when it could not have been discovered with due diligence." 460 F.3d at 292-93 (quoting Saud v. Bank of New York, 929 F.2d 916, 920 (2d Cir. 1991)). Thus, if a debtor's attorney performs the requisite due diligence required by Rule 9011 and § 527(c) of the Code[11] and still does not discover the facts upon which the debtor bases a post-confirmation claim, *res judicata* would not preclude the debtor from prosecuting that claim. The key is that the debtor must demonstrate that the facts underlying the new claim could not have been discovered with reasonable due diligence prior to confirmation and therefore the claim could not have been asserted earlier.[12] See Carvalho v. Federal Nat'l Mortgage Ass'n, 335 F.3d 45, 50 (1st Cir. 2003) ("[T]he factual circumstances surrounding post-confirmation events could not have been considered and resolved by a bankruptcy court at the time of confirmation."); Harmon v. United States ex rel. Farmers Home Admin., 101 F.3d 574, 583 n.5 (8th Cir. 1996) (noting that if the defendant had been challenging something that had actually been decided in the confirmation hearing, those arguments would have been barred; but in the subsequent action, the bankruptcy proceeding had no *res judicata* effect because "the factual circumstances giving rise to it had not yet occurred.")

---

[11] Federal Rule of Bankruptcy Procedure 9011(b) provides: "By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney . . . is certifying that to be the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances [that] (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery…" Section 527(c) provides that an attorney should include information on the petition, schedules, and statement of financial affairs arrived at "after reasonably diligent inquiry of the assisted person or others. . ." in order that such information be "reasonably accurate."

[12] A debtor might be required to litigate the factual question of whether the facts underlying the new claim could have been discovered with due diligence prior to the confirmation proceeding in order to determine whether the *res judicata* bar would apply. The Proposed Language, stating that the Court was making a "finding" that *res judicata* did not apply, short circuits the Court from making a factual finding that the debtor's attorney engaged in the requisite due diligence.

13

In Layo, the Chapter 13 Trustee argued that *res judicata* did not preclude her from seeking relief against a mortgagee post-confirmation because "the facts supporting the claim that the mortgage lien was invalid were not known to the Trustee prior to confirmation of the Chapter 13 plan." Id. at 292. The Circuit Court rejected that argument, pointing out that "the facts that form the basis for the Trustee's challenge to the mortgages were available in the county clerk's office for anyone to see," the Trustee could therefore have objected during the confirmation hearing, and because the Trustee did not engage in "the most basic type of due diligence," *res judicata* precluded the Trustee's subsequent attempt, in a post-confirmation adversary proceeding, to void the mortgage lien. Id. at 293.

The Debtors and Trustee in the instant cases have voiced their concern that a similar loss of rights could befall them if they do not include the Proposed Language in these plans. However, if they have conducted reasonable due diligence and discovered no identifiable claims, then they lose nothing by saying nothing about possible, and presently unknown, claims. In contrast, if their reasonable due diligence has disclosed claims, then those claims must be specified. If their reasonable due diligence has disclosed the possibility that a claim may exist, but they do not have the time to fully explore it prior to filing a plan, the debtors may include a reservation of rights concerning specific claims against specific parties in their plan. Or, if the facts and circumstances giving rise to claims or causes of action are discoverable by reasonable due diligence and the debtors failed to investigate readily-available facts, they will indeed be barred from later pursuing those claims.[13]

### V. CONCLUSION

The controlling case law interpreting the preclusive effect of confirmation orders and circumscribing appropriate contents of Chapter 13 plans compels this Court to conclude that the *res judicata* effect of Chapter 13 confirmation orders should not be compromised. If Debtors wish to preserve claims or causes of action, post-confirmation, they must do so with specificity and after completing reasonable due diligence. Accordingly, the Court makes the following findings. First, the Proposed Language is inconsistent with § 1327 and is not appropriate to include in a Chapter 13 plan under § 1322. Second, the Proposed Language is unnecessary to preserve post-confirmation claims that may be resolved only through an

---

[13] This is not in any way intended to impose additional burdens on attorneys who represent debtors in exigent circumstances, and who may be required to file a petition immediately, for example, to stay an otherwise imminent foreclosure action against a debtor's home. In such situations, it will most likely be difficult, if not impossible, for the attorney to conduct the kind of background investigation that would bring every possible claim the debtor may have to light so as to include such claims in the debtor's schedules and reserve rights to pursue those claims in the proposed plan. Nevertheless, even given those constraints, debtors' attorneys have a number of means at their disposal to preserve their clients' rights. They may employ the reservation of rights language concerning certain claims and creditors if they have a good faith basis to believe there may be factual and legal grounds for such claims but do not have the time to obtain necessary records and assess whether such claims exist. They may also include a provision in the plan preserving their right to amend the plan for a specified period of time expressly to include a reservation of rights after completing reasonable due diligence. In any event, as discussed above, the question is whether the debtor's attorney has made a "reasonably diligent inquiry of the assisted person" in preparing the petitions, schedules, and statements, as required under § 527(c).

adversary proceeding or which otherwise do not meet all of the prongs of the *res judicata* test. Third, the Proposed Language is too vague to fit within the exception to *res judicata* that permits debtors to preserve post-confirmation claims and causes of action only if they are described with particularity. Fourth, the Proposed Language does not meet basic due process requirements. Finally, the Court rejects the Debtors' and Trustee's argument that the Debtors need the Proposed Language to preserve rights that could not be discovered by reasonable due diligence.

Therefore, the Court sustains Creditor Bank of the West's objection to the Proposed Language in the Porter Plan, sustains Creditor DCFS Trust's objection to the Proposed Language in the Harbeson Plan, and strikes the Proposed Language from both plans.

This constitutes the Court's findings of fact and conclusions of law.

_____

Rutland, Vermont  
February 8, 2008

Colleen A. Brown  
United States Bankruptcy Judge

15